IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHARLENE H. AVERY | * | |
| v. | * | Civil Case No. JKB-17-1064 |
| COMMISSIONER, SOCIAL SECURITY | * | |

*************

REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014–01, the above-referenced case has been referred to me for review of the Commissioner's dispositive motion, [ECF No. 3], and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). The Plaintiff, Charlene H. Avery, who is appearing *pro se,* did not file a motion for summary judgment and did not respond to the Commissioner's Motion for Summary Judgment.[1] [ECF No. 13]. I have considered the Commissioner's Motion. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will recommend that the Court grant the Commissioner's motion and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g).

Ms. Avery filed a claim for Supplemental Security Income ("SSI") on April 26, 2013, alleging a disability onset date of June 16, 2012. (Tr. 155-60). Her claim was denied initially and on reconsideration. (Tr. 50-55, 57-66). A hearing, at which Ms. Avery proceeded *pro se*, was held on March 30, 2016, before an Administrative Law Judge ("ALJ"). (Tr. 25-49).

---

[1] On October 25, 2017, a Rule 12/56 letter was mailed to Ms. Avery advising her of the potential consequences of failure to oppose the Commissioner's motion. [ECF No. 14]. Ms. Avery has not filed anything in response.

Following the hearing, the ALJ determined that Ms. Avery was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 5-24). The Appeals Council ("AC") denied Ms. Avery's request for review, (Tr. 1-3), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Avery suffered from the severe impairments of "degenerative disc disease (DDD)[] [and] degenerative joint disease (DJD)." (Tr. 10). Despite these impairments, the ALJ determined that Ms. Avery retained the residual functional capacity ("RFC") to:

> perform work that involves lifting and carrying 10 pounds frequently; sitting up to 6 hours; standing and walking up to 2 hours; occasional climbing of ramps or stairs; occasional balancing; occasional kneeling; no crouching or crawling; frequent stooping; simple, routine, repetitive tasks consistent with unskilled work; no climbing of ladders, ropes or scaffolds; and use of a cane for ambulation.

(Tr. 13). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Cross could perform jobs existing in significant numbers in the national economy and that, therefore, she was not disabled. (Tr. 19-20).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons described below, substantial evidence supports the ALJ's decision.

At step one, the ALJ found in Ms. Avery's favor that she had not engaged in substantial gainful activity since her SSI application date. (Tr. 10). At step two, the ALJ found the severe

impairments listed above. *Id*. At step three, the ALJ determined that Ms. Avery's severe impairments did not meet, or medically equal, the criteria of any listings. (Tr. 13). In particular, the ALJ considered the specific requirements of Listing 1.02 ("[m]ajor dysfunction of a joint") and 1.04 ("disorders of the spine"). Listing 1.02 requires "chronic joint pain and stiffness with signs of limitation of motion" and an "inability to ambulate effectively" or "inability to perform fine and gross movements effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02. Analyzing Listing 1.02, the ALJ concluded that the record failed to demonstrate that Ms. Avery was "unable to ambulate effectively" or that she was "unable to perform fine and gross movements effectively." (Tr. 13). Regarding Listing 1.04, the ALJ determined that Ms. Avery failed to satisfy the criteria of compromise of a nerve root or the spinal cord accompanied by: (a) evidence of nerve root compression; (b) spinal arachnoiditis; or (c) lumbar spinal stenosis. *Id.* Specifically, to support his conclusion that Ms. Avery failed to satisfy a Listing, the ALJ cited to the reports of State Agency Medical Consultants and Exhibits 2F/1, 9F/13, 32, and 11F/2. *Id.* I have carefully reviewed the record, and I agree that no listings are met.

In considering the appropriate RFC assessment, the ALJ analyzed the medical evidence derived from subjective allegations, treatment notes, and consultative examinations, including the results of objective testing. (Tr. 13-18). Specifically, the ALJ noted Ms. Avery's medical records: (1) from JAI Medical Center, which demonstrated that she had "full (5/5) muscle strength of the bilateral upper and lower extremities and grip, normal sensation and gait, no lumbar tenderness to palpation, and no neurological deficits[;]" (2) from her primary care physician, Dr. Gregg, which demonstrated that her "back and leg pain" was controllable with pain medication; and (3) from her consultative physical examination with Dr. Reza Sajadi on January 6, 2014, which indicated "no significant findings regarding pulmonary function, normal

gait and station . . . normal active and passive motion of the joints, and grossly unremarkable neurological findings." (Tr. 15). In addition, despite Ms. Avery's alleged limited active range of motion of the lumbar spine and reduced lower extremity strength, her limitations did not "require continued skilled physical therapy, as she was discharged on September 30, 2014 due to non-compliance." (Tr. 16). While the ALJ conceded that Ms. Avery's back pain was legitimate (as an April 24, 2013 MRI scan of her lumbar spine revealed evidence of a diffuse disc bulge), (Tr. 14-15), he determined that the evidence, as a whole, supported a finding that Ms. Avery was able to perform the "range of sedentary work within the limitations noted in" her RFC, (Tr. 18).

Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 404 (1971). Even if there is other evidence that may support Ms. Avery's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In considering the entire record, I find the ALJ's RFC determination was supported by substantial evidence.

Continuing at step four, the ALJ found that Ms. Avery was unable to perform her past relevant work as a warehouse worker, housekeeping cleaner, deliverer, and floor waxer/buffer. (Tr. 18). At step five, the ALJ posed hypotheticals to the VE to determine whether a person with each set of hypothetical criteria would be able to find work. (Tr. 19, 40-46). Ultimately, the ALJ relied upon the VE's testimony that an individual of Ms. Avery's age, education, work experience and RFC would be able to perform jobs such as a final assembler, eyeglass frames polisher, and dowel inspector. (Tr. 19). Because such jobs exist in significant numbers in the national economy, the ALJ found that Ms. Avery was not disabled within the meaning of the

4

Act. *Id.* Accordingly, I find that the ALJ's determination was supported by substantial evidence.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that the Court GRANT Defendant's Motion for Summary Judgment, [ECF No. 13], and order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: November 28, 2017                             /s/
                                                                        Stephanie A. Gallagher
                                                                        United States Magistrate Judge